## CARTER TAYLOR V. STATE

No. 26,985. May 12, 1954

*Leon C. Levy*, Port Lavaca, for appellant.

*Wesley Dice*, State's Attorney, Austin, for the state.

WOODLEY, Judge.

The conviction is for driving a motor vehicle upon a public highway while intoxicated; the punishment, a fine of $100.

Appellant and his 11-year-old son had been on a duck hunt near Rockport. They left Mills Wharf, where they had been staying, at about 3:30 o'clock on the afternoon of November 30, 1952, appellant driving his Cadillac Sedan toward his home in Houston.

After they had passed Tivoli and were driving toward Port Lavaca, other travelers on the highway noticed that the Cadillac was being driven slowly along the highway, stopping or almost stopping when the car approached bridges along the way.

Officers at Port Lavaca were notified and when they met appellant's car some 15 or 20 automobiles were following behind it.

Appellant was taken into custody and a number of witnesses who saw and observed him while driving his car, and after he was stopped by the officers, expressed the opinion that he was intoxicated. They based their opinion upon the usual symptoms such as the odor of whisky on his breath; his flushed face; his staggering walk; his expression; his mumbling speech; the appearance of his eyes and the manner in which he drove his automobile.

One of the officers testified that he had seen a person who was taking drugs that showed the same symptoms as appellant did on this occasion, but all of the state's witnesses expressed the opinion that he was intoxicated.

Appellant did not deny that he showed the symptoms described by the state witnesses, but attributed his condition to extreme fatigue and to the effect of the anti-histamine pyribenzamine. He testified that he had gotten up at 4 or 4:30 A.M., as he had on the previous morning, and that he and his son had spent the morning in a duck blind; that upon returning to Mills Wharf he went to the cafe about 1 P.M., and at his invitation some friends joined him in a highball. He testified that the two scotch highballs he consumed before lunch was the only liquor he had consumed that day.

After a light lunch, appellant related that he went to his cabin and packed his belongings for the return trip to Houston, then returned to the cafe where he paid his bill and bade his friends good-bye.

Witnesses testified that when appellant drove away he appeared to be tired but they saw no evidence of his being intoxicated. No one testified that he consumed any liquor other than the two highballs before lunch.

Appellant testified that he was a victim of hay-fever and under the direction of his doctor used pyribenzamine, both in

tablet form and in form of a liquid spray; that he took one tablet with his second highball and another after he had finished packing; that he used his inhaler frequently and that at Tivoli he took a third pyribenzamine tablet.

There was medical testimony to the effect that all of the histamine drugs are depressing drugs; that pyribenzamine is given to counteract the effect of any allergy; that even normally prescribed doses will make people "sleepy and dopey and probably not behave as they would normally," and that doctors usually have to caution their patients "about the fact that it acts as a sedative, depresses them, causes them to become sleepy, and when operating a car or something like that they should be worried that they are liable to become dopey or under the influence of this sedative action of the drug." Also that pyribenzamine "could give the same effect, that is, appearing pretty drunk."

It is thus seen that the issue was closely contested as to whether appellant's actions and symptoms were the result of his being under the influence of intoxicating liquor. If under the influence of the drug pyribenzamine to a degree which rendered him incapable of safely driving his automobile, the offense would be that defined in Art. 6701 (d), Sec. 50, V.C.S., and not the offense here charged which is defined in Art. 802 V.A.P.C.

Appellant placed in issue his general reputation for truth and veracity and offered witnesses who testified that it was good.

The eleven-year-old son of appellant was not called as a witness.

Appellant testified that during the trip he made his son get in the back seat, saying "You are interfering with my driving." He denied on cross-examination that the boy volunteered to get in the back seat.

Over objection that it was hearsay and not the best evidence, Officer Williams was permitted "to impeach the veracity of Mr. Taylor" (the defendant) by the following:

"Q. Did Carter Taylor, Jr., tell you why he went from the front seat to the back seat? A. Yes, sir, he did.

"Q. Tell the jury what he said. A. He said coming in from Mills Wharf he noted that his daddy couldn't drive the way he

should and he thought he was first playing with him, so he said, 'Daddy thought I was belligerent when I went into the back seat, but I wasn't. I didn't want to get hurt.' . . ."

The testimony of the officer as to the statement of appellant's son was hearsay and inadmissible, nor should the state have been permitted to impeach appellant's testimony on the collateral matter of whether the son voluntarily got in the rear of the car or was made to do so.

The testimony, under the facts here, was prejudicial to applicant's rights and requires that the conviction be set aside.

The judgment is reversed and the cause is remanded.